204 P.2d 171

### EAGLE–PICHER MINING & SMELTING CO. v. MEYER.
### No. 5045.

Supreme Court of Arizona.
March 21, 1949.

Rehearing Denied April 28, 1949.

Ben C. Hill, of Tucson, for appellant.

Fred W. Fickett, William S. Dunipace, and Robert S. Tullar, all of Tucson, for appellee.

PHELPS, Justice.

This is an appeal from a judgment of the Pima County Superior Court in favor of Henry H. Meyer, Appellee, and against the Eagle-Picher Mining and Smelting Company, a corporation, Appellant herein.

The facts are that appellant claims to be the owner of certain mining claims located in the Pima Mining District in Pima County, Arizona, among which are a number of claims known as the Wakefield group including the Staple. Claim of right to the various claims were initiated at different times.

This litigation, however, involves only the Staple claim. We will therefore confine our statement of facts as much as possible to this claim. The A. G. Belmer mining claim situated in the Pima Mining District was located in December, 1899, by A. G. Belmer and Warren Allison. Extensive work was done on the Belmer claim under an option agreement of purchase by one Charles P. Reininger, all of which was done prior to 1920. The work included sinking of shafts and running of tunnels,

as well as expending large sums of money in erecting buildings and in the installation of mining machinery on said Staple claim. Reininger ceased all work on said claim in 1919 and no one thereafter ever did anything to indicate an intention to continue to hold said claim.

In 1923 one T. K. Landros attempted to relocate the same area covered by the A. G. Belmer claim as an abandoned claim, designating it as the Staple. Within a few days Landros by quit-claim deed conveyed said claim together with two others located by him, known as the Lock and Key, to one Charles H. Pogue and on April 18, 1928, Pogue conveyed said claims by quit-claim deed to W. L. Wakefield. The latter held said claims until his death in 1932 and at all times lived on the Staple until a short time before his death when he was removed to a hospital in Tucson.

At the time Landros relocated the Staple as an abandoned claim, in addition to the large amount of work done thereon as above mentioned there was what was known as the discovery shaft of the approximate required dimensions located about 100 feet from the east center end of said claim. Said discovery shaft was not sunk 8 feet deeper than it was originally and no additional exploration work of any kind was done in said shaft at the time of the relocation or at any time thereafter. No additional monuments were ever erected on said claim by appellant or its predecessor in interest until proceedings were begun to procure patent, in 1945. Notices were merely placed in the old monuments. On the west end of the A. G. Belmer claim now known as the Staple claim there never has existed any monuments except that monuments were located on the east end of the Minnesota claim owned by one A. W. Forbes, lying approximately west of the A. G. Belmer claim. The east boundary of the Minnesota as monumented was approximately 100 feet from the west boundary of the A. G. Belmer or Staple claim and the northwest corner of the Staple was approximately 290 feet from the monument on the northeast corner of the Minnesota. There is nothing in the location notices of the Staple tying it to the east monuments of the Minnesota.

Appellant introduced in evidence ore taken from the old discovery shaft which it claimed was of a character and value sufficient to warrant a prudent man in expending labor and means for further exploration and development of said claim. This evidence was disputed by witnesses for appellee. No finding was made by the court on this issue, and the court stated that it deemed such finding unnecessary. Prior to 1932 no work was done upon the claim in question either by Landros, Pogue or Wakefield.

Upon the death of Wakefield in March, 1932, the probate court of Pima County appointed one Miles Carpenter executor of his estate who duly qualified and acted as such until his death in 1942.

Congress in 1933 passed a law suspending the assessment work on unpatented mining claims which included the claims owned by the Wakefield estate. The executor of said estate in conformity with the provisions of said act duly filed his claim of intention to hold said mining claims for the years 1933, 1934, 1935, 1936, 1937, and 1938. In 1939 the act of Congress suspending annual assessment work on said claims having expired, there was filed an affidavit with the County Recorder of Pima County to the effect that the required labor upon said claims had been performed. He did this again in 1940 and in 1941. In his affidavit of labor performed in 1941 his reference to the Staple erroneously stated the page numbers of the Book in the County Recorder's office. On May 7, 1942, Congress again suspended assessment work on unpatented mining claims and notices of intention to hold said mining claims provided for under the suspension act were filed by the appellant and its predecessors in interest each year thereafter until after location of the Bobby Claims 1, 2 and 3 by appellee in 1942. In all of these notices there occurred the same error as to page number.

In 1939 upon petition of the executor the probate court of Pima County authorized the sale of the Wakefield group of claims including the Staple to one M. K. Doyle under an optional sales contract on condition that the purchaser should do the assessment work on the claims as provided by law, said contract being executed on May 19, 1941, the consideration being the sum of $1800 payable in the manner provided in the contract.

M. K. Doyle exercised his option to purchase the property and a conveyance of said claims was authorized by the court to be made to him upon the payment of the purchase price and thereafter on June 3, 1943, said conveyance was made. On the same date the said M. K. Doyle conveyed said claims including the Staple to the defendant, (appellant herein). On April 8, 1942, the plaintiff Henry H. Meyer (appellee herein) located mining claims designated Bobby No. 1 and Bobby No. 2 in the Pima Mining District and on May 7, 1942, located Bobby No. 3, said claims being adjacent and overlapping the Staple, the Minnesota and the Turk. Appellee relocated Bobby No. 1 on December 20, 1943, and Bobby No. 2 on November 16, 1946, the boundaries of said claims remaining approximately the same but a change was made in the location of the discovery hole on each of said last named claims.

The appellant in 1945 instituted proceedings before the land office for a patent to a group of claims including the Staple and in July, 1946, appellee filed with the land office an adverse to said proceedings and the said proceedings were by the land office held in abeyance until the rights of the parties could be litigated in court. The appellee thereupon filed an action in the Pima County Superior Court to quiet title to

Bobby Claims 1, 2 and 3 as against appellant. Later appellee disclaimed any adverse claim to the Minnesota and the Turk thus limiting the issues here to the rights of the respective parties to the area lying within the boundaries of the Staple. The trial court found all of the material issues in favor of the appellee and appellant brings the cause here on appeal.

Appellant has presented to the court several assignments of error which in their final analysis present the following questions for consideration of the court:

1. Was the area within the boundary of the Staple mining claim open ground and subject to location by appellee at the time he located the Bobby claims Nos. 1, 2 and 3 in 1942.

2. If said area was open to location, were the locations of appellee's claims valid locations.

3. Did the court make and file findings of fact and conclusions of law as requested by counsel under the provisions of section 21-1028, A.C.A.1939.

An answer to these questions will, in a large measure, determine the secondary issues raised. Although the above questions presented for consideration are both substantive and procedural in their nature, both brevity and logic require that they be considered together in arriving at their solution.

In determining whether or not the area within the boundaries of the Staple claim was open to location at the time appellee initiated his locations, it is necessary to ascertain what was done by appellant's predecessors in interest in the location of said claim. The evidence amply supports the trial court's finding that at the time T. K. Landros attempted to locate the Staple claim on July 1, 1923, that he purported to relocate said claim upon abandoned property; that there was a discovery hole existing on said property at the time; that the said Landros did not dig said discovery hole 8 feet deeper as required by the provisions of section 65-106, A.C.A.1939; that no monuments were placed around the outer boundaries of said claim but that the notices were placed in such monuments as were there at the time; that no monuments were ever on the west end of the Staple claim, the only monuments there being the east monuments of the Minnesota claim owned and maintained by one A. W. Forbes, and that no monuments have ever been placed at the west end of said Staple claim by any person prior to the location of the Bobby claims Nos. 1, 2 and 3; that no monument was placed at the discovery hole of the Staple at any time prior to the location of the Bobby claims.

Under the law of this state and of the United States these acts on the part of Landros did not constitute a valid location of the Staple mining claim. While a relocator may lawfully adopt the monuments of a former locator and even the discovery of ore in place by a former lo-

cator, he may not adopt the discovery work required under the statute to be done in order to make a valid location of a mining claim. Hagan v. Dutton, 20 Ariz. 476, 181 P. 578; Peachy v. Gaddis, 14 Ariz. 214, 127 P. 739, 741.

Justice Ross in writing the opinion for the court in the latter case, said:

" * * * If Gaddis and Sauls 'adopted the monuments, boundaries and description, and the discovery and discovery workings of the East Side lode,' their effort to relocate was abortive. Granting that they could legally adopt the 'monuments, boundaries and description and the discovery' of the prior location, certainly under no circumstances could they adopt the 'discovery workings.' * * * "

He then referred to the statute relating to relocation of an abandoned claim which is in substance the same as section 65-106, A.C.A.1939, and then called attention to the requirements of the Code to constitute a valid location of a mining claim which is in substance the same as the last part of section 65-103, A.C.A.1939. The statute referred to by the court provides:

"Failure to do all the things enumerated in the proceedings section [preceding sections] in the time and place specified shall be construed into an abandonment of the claim, and all right and claim thereto of the discoverer and locator shall be forfeited." Civ.Code 1901, § 3235, as amended by Laws 1903, c. 90, § 21.

The court then proceeded to state:

"Clearly, according to the allegations of the complaint, no discovery work was done by Gaddis and Sauls under the new locations, and any attempt by them to acquire the ground by virtue of relocations must 'be construed into an abandonment of the claim, and all right and claim thereto' was forfeited so far as attempted to be acquired under such relocations. In other words, according to the allegations of the complaint, they failed to do all the acts and things necessary to constitute a valid location, and therefore acquired no rights thereby. * * * "

■ This court therefore holds, as a matter of law, that there being no valid location of the Staple claim that nothing thereafter done by the appellant or its predecessors in interest could give vitality to said location. Certainly the performance of the annual assessment work on such claims would not have the effect of making it a valid location. Under the Federal statute hereinafter set forth adverse possession and doing the annual assessment work for the statutory period of limitation in the state where the claim is located obviates the necessity of proving a valid location. Title in such event, however, is based on adverse possession and not on the validity of the original location.

In the case of Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735, it appears that Belk entered upon a mining claim in December 19,

1876, and undertook to locate the same when the land was not open to location. In January, 1877, the land then being open to location, he re-entered upon said claim and as the court said, sought to avail himself of what others had found in the way of discovery and relied on what he had done in December in the way of discovery work. The court said he did not do what was necessary to effect a valid relocation after January 1st. In other words the effect of the court's ruling is that the work required to be done in perfecting the location of a mining claim must be done at the time the location is attempted to be made and not at any other time. Under our statute the law gives to a locator 90 days within which to do all that is required under the law to prove a valid location. This court has held in substance in the case of United Bank & Trust Co. v. Joyner, 40 Ariz. 229, 11 P.2d 829, that a contract void ab initio may not thereafter have the breath of life breathed into it by subsequent acts.

Except for the failure of the court to find appellee to be a citizen of the United States which the evidence clearly shows him to be, it found every material fact and issue necessary to arrive at its judgment rendered in this cause including the fact that no annual assessment work was done on said claim at any time. The court found that the prima facia fact raised by the filing of affidavits of annual assessment work was overcome by a preponderance of evidence, which was equivalent to a finding

that no work was done on any of the Wakefield group which could be considered for the benefit of the Staple claim.

■ The findings of fact and conclusions of law made and filed by the court were denominated "Ruling of the Court" and were referred to as findings of fact and conclusions of law in the judgment of the court. The court stated that it did not deem it necessary to find whether there was mineral in place in the original discovery hole on the Staple claim because of the other findings made. This clearly indicates that it did intend said document to be a finding of facts and conclusions of law. The document is in no sense of the word "an opinion" stating the court's reasons for arriving at any particular conclusion but consists exclusively of facts found and conclusions based thereon.

The court unquestionably had reference to its finding that no additional discovery work was done at the old discovery hole at the time of the attempted relocation and that the claim was not monumented so that its boundaries could be easily determined. It further found that the Bobby claims Nos. 1, 2 and 3 were properly monumented, that a discovery shaft was dug, meeting the requirements of the statute and mineral discovered in place and found as a conclusion of law, that said locations were valid.

■ This court will not disturb the findings of the trial court where there is a conflict in the evidence. Findings of jury

and trial court on conflicting evidence settles issues on appeal. De Mund v. Benson, 33 Ariz. 374, 265 P. 84. The findings of fact by the trial court are conclusive on appeal. Ingersoll v. Scott, 13 Ariz. 165, 108 P. 460; Henry v. Mayer, 6 Ariz. 103, 53 P. 590. This seems to be the universal rule. The findings of the trial court are amply supported by the evidence and will therefore not be disturbed.

■■ It follows then that the location of the Bobby claims must be sustained unless the claim of the appellant that the two-year statute of limitations, A.C.A.1939, § 29-105, has barred the appellee from maintaining his cause of action. The trial court concluded that the two-year statute of limitation was not applicable to the facts in this case to which we agree. Even if such statute were applicable the evidence clearly discloses that appellant had the Bobby claims (which it claimed overlapped the Staple) leased from appellee during a large portion of the two-year period upon which it relies as a bar to appellee's right to maintain his action. This definitely tolled the statute of limitations during the period said claims were leased to appellant.

The appellant has raised the further question here that under the provisions of section 2332 of the Revised Statutes, 30 U.S.C.A. § 38, which provides:

"Where such person or association, they and their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the State or Territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto under this chapter, in the absence of any adverse claim; * * *."

That appellant having been in possession and having done the annual assessment work on the Staple claim for the statutory period of limitations under the laws of this state, said claim was not open to location in 1942 but on the contrary it was then entitled to proceed to patent thereon.

An examination of the records of the trial court in this cause indicates that this issue was not raised by counsel nor considered by the court during the course of the trial. It was evidently an afterthought of appellant presented for the first time in its briefs to the lower court. That court did find as a fact that the appellant and its predecessors in interest never at any time were in the exclusive possession of the Staple claim for a period of ten years or more. The Federal statute, supra, refers to the state statute relating to adverse possession which in this case is the five-year statute, section 29-102, A.C.A. 1939. Title by adverse possession is not plead by appellant either under the provisions of section 29-102 or section 29-103, A.C.A.1939, the latter being the ten-year statute.

This court has held that the statute of limitations is a privilege which the party may waive at any time. Frederickson v. McIntyre, 52 Ariz. 61, 78 P.2d 1124. See also Union Sugar Co. v. Hollister Estate Co., 3 Cal.2d 740, 47 P.2d 273. Section 21-406, A.C.A.1939, requires that the statute of limitations must be plead as an affirmative defense. Section 21-436, A.C.A. 1939, provides that a defense not plead is waived. Carter v. Powell, 5 Cir., 104 F.2d 428. We conclude that the defense of limitation was waived. The finding of the trial court on the ten-year statute, instead of the five-year statute, to our mind constitutes further evidence that the question was not by common consent considered an issue during the course of the trial. The only intimation that either of these statutes were in issue during the trial is the vague testimony of Jesus and Nevis Ortiz to the effect that Wakefield resided upon the Staple for a number of years before it was conveyed to him by Pogue in 1928 and that he continued to live on said claim until shortly before his death in 1932. He did no assessment work at any time on any of the claims so far as the evidence discloses. His actual possession was limited to the small area occupied and was used by him and did not extend to the entire claim, nor was his possession exclusive. The Staple was at all times he lived on it, open to location as a mining claim under the laws of the state and the United States. Noyes v. Black, 4 Mont. 527, 2 P. 769; Tibbitts v. Ah Tong, 4 Mont.

536, 2 P. 759; Oliver v. Burg, 154 Or. 1, 58 P.2d 245.

The record would justify the conclusion that this evidence relating to actual possession was introduced in support of the two-year statute of limitations plead by appellant. Other evidence presented by appellant in the trial court relating to possession, notice of intention to hold said claim and performance of annual assessment work was necessary to establish its legal right to possession as against appellee regardless of its reliance on the statute of limitations under the Federal statute, supra.

Our Rule 12 provides with respect to appeals that:

"1. All assignments of error must distinctly specify each ground of error relied upon and the particular ruling complained of. * * *"

"2. If the assignment of error be that the court overruled a motion for new trial and the motion is based on more than one ground the same will not be considered as distinct and specific by this Court unless each ground is specially and distinctly stated in the assignments of error."

Appellant's assignment of error No. 2 upon which it relies to present to this court the statute of limitations referred to in the Federal statute above quoted is as follows:

"The court erred in ruling that the Bobby locations were valid as to their conflict

with the Staple mining claim for the reason that at the time of the Bobby locations the Staple mine was a valid, subsisting mining claim, legally owned and held by, and in the possession of, the defendant under the mining laws of the United States."

There is no language in this assignment that would give this court any intimation that appellant intended to rely upon the Federal statute above quoted and the statute of limitations applicable to mining claims in this state. We therefore hold that this question is not before us and that we are under no duty under the provisions of Rule 21-449, A.C.A.1939, to consider it.

 The only other matter presented by appellant is that the Bobby claims are over 1700 feet in length. There is no dispute that the limit of the length of a claim under the statute is 1500 feet. Anything in excess of that is without legal effect especially in so far as the excess is concerned.

"Mining claim located in excess of the dimensions permitted under the mining laws of the United States and the rules of miners adopted in the mining districts not in conflict therewith is not wholly void, but the excess may be rejected and the claim be held good for the remainder, if the claim was made in good faith and no one else is injured by such action (Citing many cases.)" 30 U.S.C.A. § 23, note No. 100.

However, the appellant, having no right of claim whatever to any part of the area within the Staple claim, is in no position to raise this point.

The judgment of the lower court is accordingly affirmed.

UDALL, STANFORD, and DE CONCINI, JJ., concur.

LA PRADE, C. J., due to illness, did not participate in determining this appeal.